HOWE, Judge,
concurring in part, dissenting in part:
¶22 I agree with the Majority that the municipal court erred by precluding Ishak from presenting his Arizona Medical Marijuana (“AMMA”) card in evidence at his trial for driving with a marijuana metabolite in his body in violation of A.R.S. § 28-1381(A)(3). Ishak was indeed entitled to present it to establish the affirmative defense recognized in Dobson v. McClennen, 238 Ariz. 389, 390 ¶ 2, 361 P.3d 374, 375 (2015), that marijuana or its metabolite was in a concentration insufficient to cause impairment. I must dissent, however, from the Majority’s ruling that the error prejudiced Ishak.
¶23 The Majority finds that Ishak was prejudiced because it cannot be certain that had Ishak been allowed to present his AMMA card a jury would have rejected Is-hak’s argument that he was not “under the influence” of marijuana or its metabolite when he was stopped. See supra ¶ 12. This conclusion is based on the Majority’s belief that the Dobson affirmative defense depends on whether the defendant was actually impaired by marijuana or its metabolite. See supra ¶ 14. This misreads Dobson and the AMMA immunity provision, A.R.S. § 36-2802(D), however; the issue is not whether the defendant was actually impaired by marijuana or its metabolite, but whether the marijuana or its metabolite in the defendant’s blood was in a concentration insufficient to cause impairment generally. Because Ishak did not present evidence from which a jury could find that the concentration of marijuana metabolite in his blood was insufficient to cause impairment generally, he could not have established the Dobson affirmative defense even if the municipal court had admitted his AMMA card. The error consequently did not prejudice Ishak, and reversing his conviction is unwarranted.
¶ 24 The Dobson affirmative defense does not work as the Majority suggests. The AMMA creates a presumption that a qualifying patient is lawfully engaged in the medical use of marijuana if the patient is “in possession of a registry identification card” and is “in possession of an amount of marijuana that does not exceed the allowable amount of marijuana.” A.R.S. § 36-2811(A)(l)(a)-(b). This does not immunize a patient from prosecution for a driving under the influence of *370 fense, A.R.S. § 36-2802(D), but it does mean that “a registered qualifying patient shall not be considered to be under the influence of marijuana solely because of the presence of metabolites or components of marijuana that appear in insufficient concentration to cause impairment,” id. Interpreting this language in Dobson, our supreme court concluded that a patient may present an affirmative defense to an (A)(3) charge by establishing that (1) the AMMA authorized the patient to use marijuana and (2) the “marijuana or its metabolite was in a concentration insufficient to cause impairment.” Dobson, 238 Ariz. at 393 ¶ 20, 361 P.3d at 378. The defendant bears the burden of proof on the defense. A.R.S. § 13-205(A) (“[A] defendant shall prove any affirmative defense raised by a preponderance of the evidence.”); Dobson, 238 Ariz. at 393 ¶ 20, 361 P.3d at 378 (recognizing that A.R.S. § 13-205(A) applies).
¶ 25 Ishak satisfied the first element of the affirmative defense. Neither party disputed that Ishak could properly use marijuana under the AMMA as evidenced by his valid AMMA card. But Ishak has not met the second element because, as the superior court held, he did not establish that the THC concentration was insufficient to cause impairment. The State presented evidence that Ishak had 26.9 ng/ml[4] of THC, the actual drug, and an unknown amount of hydroxy-THC, an impairing metabolite, in his blood.[5] Ishak did not show that the THC concentration was insufficient to cause impairment, either during Ishak’s cross-examination of the State’s expert or his direct examination of his own expert. In fact, neither the State’s expert nor Ishak’s expert testified that such an amount was insufficient to cause impairment. Indeed, the record shows that on cross-examination, Ishak’s expert acknowledged the 26.9 ng/ml level in Ishak’s blood was high. Ishak’s expert also testified that such a THC concentration could cause impairment in many people and that he had read studies where “many” individuals “dosed” with that level were impaired.
¶ 26 In concluding that the second element of the defense is satisfied if the defendant merely shows that the THC or its metabolite concentration did not actually impair him, the majority blurs the distinction between an (A)(1) prosecution and an (A)(3) prosecution. For an (A)(1) prosecution, the State must prove that a defendant is actually impaired, see AR.S. § 28-1381(A)(l), but for an (A)(3) prosecution, it must prove, regardless of actual impairment, that the defendant was “discovered with any amount of THC or an impairing metabolite in [his] body,” State ex rel. Montgomery v. Harris, 234 Ariz. 343, 347 ¶ 24, 322 P.3d 160, 164 (2014). Under the majority’s view, although an (A)(3) conviction does not deal with actual impairment, a defendant may obtain an (A)(3) acquittal by proving that he was not actually impaired and may prevent the State from obtaining an (A)(1) conviction if he meets his lower burden of proving that he was not actually impaired. In other words, in attempting to establish an affirmative defense for an (A)(3) conviction, the defendant may obtain an (A)(1) acquittal.
¶ 27 The Majority’s blurring of (A)(1) offenses with (A)(3) offenses is inconsistent with the historical treatment of driving under the influence offenses. In the context of cases involving alcohol as the impairing substance, driving under the influence while actually impaired—(A)(1) offenses—and driving with an alcohol concentration of .08 or more— A.R.S. § 28-1381(A)(2) offenses—are “two separate and distinct offenses.” See Anderjeski v. City Court of Mesa, 135 Ariz. 549, 550, 663 P.2d 233, 234 (1983) (addressing a prior version of the driving while under the influ *371 ence statute). Our supreme court explained that
[i]t is possible to have less than 0.10 blood alcohol content[6] and still be under the influence of intoxicating liquor. Such a person would then be guilty of violating [(A)(1)] and not [(A)(2)]. On the other hand, a person may have over 0.10 per cent blood alcohol content and still not have his driving abilities significantly impaired to come within the provisions of [(A)(1)].
Id. at 550-51, 663 P.2d at 234-35. The difference between an (A)(1) and (A)(3) conviction is similar to that between an (A)(1) and (A)(2) conviction. A person may be actually impaired by marijuana and be guilty of (A)(1), yet have a concentration insufficient to cause impairment generally and be not guilty of (A)(3). And conversely, as in this case, Ishak may not be actually impaired and be not guilty of (A)(1), yet have a THC concentration of 26.9 ng/ml—an admittedly high number—and be guilty of (A)(3). The Majority’s analysis, however, precludes Ishak and any person with a high level of THC or its metabolite from conviction for an (A)(3) violation if they are not actually impaired. This makes (A)(3)—which was designed to permit conviction without regard to actual impairment—a nullity. This effect directly contradicts our supreme court’s statement in Dobson that “§ 36-2802(D) does not shield registered qualifying patients from prosecution under (A)(3).” 238 Am. at 392 ¶ 17, 361 P.3d at 377.
¶ 28 Moreover, the Majority’s analysis permits different results depending on the driver’s choice of impairing substance. If a person drives after drinking alcohol and achieves a blood alcohol concentration of .08 or more, he is guilty of driving under the influence under A.R.S. § 28-1381(A)(2), even if he can ineontrovertibly prove that this alcohol concentration did not actually impair him. Yet, if the driver ingests marijuana and achieves a concentration of THC or its metabolite in his blood that would generally cause impairment, he can be found not guilty of an (A)(3) charge if he proves that he was not actually impaired. Such a divergence of outcomes—given the statute’s plain goal to punish those who drive while actually impaired or while having taken substances that cause impairment, regardless of the type of substance ingested—is nonsensical. The Majority’s analysis is inconsistent with the plain reading of A.R.S. § 36-2802(D), Dobson, and the purposes of the driving under the influence statute.
¶ 29 The majority bases its analysis also on the notion that a defendant should not be required to present expert testimony to support an affirmative defense, which would be necessary if a defendant had to prove that THC or its metabolite in his blood was in a concentration insufficient to cause impairment. See supra ¶¶ 13-14, 18. But requiting expert testimony to prove a drug concentration amount is not uncommon within Arizona’s driving while under the influence statutory scheme. In the same driving while under the influence statute, a person violates A.R.S. § 28-1381(A)(2) if the person is driving or in actual physical control of a vehicle with a blood alcohol concentration of .08 or more within two hours of driving or being in actual physical control of the vehicle. To prove a blood alcohol content of .08 or more, the State must present expert testimony. Likewise, if a defendant in a marijuana prosecution wants to present the affirmative defense that the concentration of THC or its metabolite in his system does not cause impairment, he must present expert testimony supporting that defense.
¶ 30 I agree that the municipal court erred by not admitting Ishak’s AMMA card. In my view, however, the error did not prejudice him because he presented no evidence showing that the THC concentration in his blood was insufficient to cause impairment. I would deny relief.

. The AMMA does not set a per se marijuana concentration limit, but others states have set such limits, which are all notably far less than the concentration amount here. See Colo. Rev. Stat. Ann. § 42-4-1301 (6)(a) (IV) (5 ng/ml of THC gives permissible inference of being under the influence); Mont. Code Ann § 61—8—41 l(l)(a) (5 ng/ml of THC per se limit); Nev. Rev. Stat. Ann. § 484C.110(3)(g)-(h) (2 ng/ml limit for marijuana and 5 ng/ml for its metabolite); Ohio Rev. Code Ann. § 4511.19(A)(l)(j)(vii) (2 ng/ml limit); Pa. Cons. Stat. Ann. § 3802(d)(1) (1 ng/ml per se limit (41 Pa. Bull. 2295)); Wash. Rev. Code Ann. § 46.61.502(l)(b) (5 ng/ml of THC within two hours of driving is limit).

. For comparison, the petitioners in Dobson had 8.5 ng/ml and 10 ng/ml of THC in their blood system. See Dobson, 236 Ariz. at 207 n.2, 337 P.3d at 572 n.2, vacated, 238 Ariz. at 389, 361 P.3d at 374.

. The statutory alcohol concentration limit at the time was .10. Andetjeski, 135 Ariz. at 550, 663 P.2d at 234 (citing former A.R.S. § 28-692).